### CLARENDON NATIONAL INSURANCE COMPANY, Appellant,

v.

### Dennis Ross THOMPSON, Appellee.

Clarendon National Insurance Company, Appellant,

v.

Dennis Ross Thompson, Appellee.

In re Clarendon National Insurance Company, Relator.

Nos. 01–05–01071–CV, 01–06–00049–CV, 01–06–00450–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 20, 2006.

filed a separate suit, seeking a temporary injunction to enjoin Thompson from executing on the default judgment. The trial court denied Clarendon's request for temporary injunctive relief.

In appellate cause number 01–05–01071–CV, Clarendon contends, in two issues, that the trial court erred in granting the motion for summary judgment on its bill of review claim.[1] In appellate cause number 01–06–00049–CV, Clarendon asserts one issue challenging the trial court's denial of its request for a temporary injunction.[2] Clarendon has also filed a related petition for writ of injunction in this Court, cause number 01–06–00450–CV.

We reverse the judgment of the trial court granting Thompson's motion for summary judgment and remand the proceeding to the trial court; affirm the judgment of the trial court denying Clarendon's request for a temporary injunction; and deny Clarendon's petition for writ of injunction.

Robert C. McCabe, Holm, Bambace & McCabe, L.L.P., Houston, TX, for Appellant.

James A. West, James A. West, P.C., Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

These two appeals and one original proceeding arise from a no-answer default judgment obtained by Dennis Ross Thompson (Thompson) against Clarendon National Insurance, Company (Clarendon). Clarendon filed a petition for bill of review to challenge the default judgment. The trial court granted Thompson's motion for summary judgment, denying Clarendon's petition for bill of review. Clarendon also

## Background

Thompson filed suit against Clarendon and its third-party administrator, Americomp Billings Solutions, Inc. On May 5, 2003, the trial court signed an interlocutory default judgment against Clarendon in favor of Thompson. The judgment recited that Clarendon's registered agent had been served with process and that the citation and proof of service had been filed with the trial court. The judgment further recited that Clarendon had not filed an answer to Thompson's suit. On June 10, 2003, the trial court signed an order granting Thompson's motion to nonsuit his claims against Americomp Billings Solutions.

---

1. Trial court cause number 2005–16954.

2. Trial court cause number 2005–16953.

On December 27, 2004, Clarendon received a letter from Thompson's attorney pursuing collection of the judgment. On March 15, 2005, Clarendon filed a petition for bill of review directly attacking the judgment. Clarendon alleged that it had not been notified by the district clerk's office of the default judgment. Clarendon complained that, because it did not have notice of judgment, it was deprived of its right to file a motion for new trial.

Also on March 15, 2005, in a separate action, Clarendon filed a petition for temporary injunction seeking to enjoin Thompson from executing on the default judgment. Clarendon asserted that it would succeed on its bill of review and alleged that it feared Thompson would quickly spend any funds he obtained from executing the default judgment, leaving Clarendon without meaningful recourse against Thompson when it succeeded on its bill of review.

In the bill of review proceeding, Thompson filed a motion for summary judgment and a supplemental motion for summary judgment to which Clarendon responded. The trial court granted Thompson's motion for summary judgment, without stating the basis. In the temporary injunction proceeding, the trial court denied Clarendon's requested relief.

In separate appeals, Clarendon challenges the trial court's summary judgment and the trial court's order denying its temporary-injunction request. Clarendon has also filed a petition for writ of injunction in this Court, seeking to enjoin the disbursement of its funds to Thompson, which the trial court had placed in receivership to satisfy the default judgment.

## Appeal of Summary Judgment
### (No. 01–05–01071–CV)

Clarendon presents two issues challenging the trial court's granting of Thompson's motion for summary judgment.[3]

### A. Standard of Review

Though he did not expressly state whether he sought traditional or no-evidence summary judgment, Thompson's motion for summary judgment reads as a hybrid summary judgment motion in which Thomson raised both traditional and no-evidence points. This is an important distinction because the two forms of summary judgment invoke different standards of review. *Compare* Tex.R. Civ. P. 166a(c), *with* Tex.R. Civ. P. 166a(i) (setting forth the different burdens borne by movant and nonmovant under each section).

The movant for traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex.2005). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek*

---

**3.** Thompson filed a motion for summary judgment and a supplemental motion for summary judgment. For ease of reference, we refer to these two filings collectively as a motion for summary judgment.

*Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex.2004).

In contrast, the party moving for no-evidence summary judgment must assert only that there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements. *See id.* A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. Tex.R. Civ. P. 166a(i); *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex.2003). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Forbes*, 124 S.W.3d at 172. More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Id.* As with a traditional summary judgment, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003).

■ If the trial court has granted summary judgment without specifying the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced is meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

**B. Analysis of Grounds Asserted to Support Summary Judgment**

Clarendon's first issue challenges the grounds offered by Thompson in support of his motion for summary judgment.

**1. Did Clarendon's negligence in failing to answer defeat its claim for bill of review?**

■ Thompson asserted, as his first ground for summary judgment, that Clarendon's bill of review should be denied, as a matter of law, because it was Clarendon's negligence in failing to file an answer that prevented it from asserting its defense to the suit. As cited by Thompson, a bill of review plaintiff must *ordinarily* plead and prove (1) a meritorious defense to the underlying cause of action, (2) which the plaintiffs were prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on their own part. *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex.2004).

In contrast, Clarendon contends, as it did in the trial court, that whether its failure to answer was unmixed with its own negligence is irrelevant under the facts pled. Clarendon points out that it did not allege that it was denied the opportunity to answer Thompson's suit. Rather, Clarendon alleged in its bill of review petition that it was deprived of the opportunity to request a new trial because of official mistake, that is, because the district clerk did not send notice of judgment.

■ Relying on *Hanks v. Rosser*, Clarendon asserts that a plaintiff alleging that it was denied its right to request a new trial because of official mistake is not required to show that it was free from negligence in failing to answer. Instead, when such allegations are involved, the bill of review plaintiff must show that its failure to answer was not intentional or as a result

of conscious indifference. 378 S.W.2d 31 (Tex.1964). We agree with Clarendon.[4] *See id.* at 34–35.

This is not to say that negligence is not a consideration in bill of review proceedings in which the plaintiff alleges that it lost the opportunity to request a new trial. In its opinions following *Hanks*, the supreme court reiterated that a plaintiff must show an absence of negligence with regard to the loss of the defensive opportunity of which the plaintiff complains in its bill of review petition.[5] *See Gracey v. West*, 422 S.W.2d 913, 915–16 (Tex.1968); *Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240, 246 (Tex.1974). Thus, when a plaintiff complains that it lost the opportunity to request a motion for new trial, the relevant inquiry with regard to the plaintiff's negligence becomes whether its negligence resulted in it losing the right to file a motion for new trial. *See Petro–Chemical Transport*, 514 S.W.2d at 246 (requiring bill of review plaintiff to prove absence of negligence in failing to file a motion for new trial or appeal when it

complains of lost meritorious motion for new trial or appeal).

To the extent that Thompson's motion for summary judgment alleged that Clarendon's failure to request a new trial was caused by its negligence in failing to answer, such assertion does not succeed. *Hanks* instructs us that Clarendon had "two rights or remedies" in the default-judgment proceeding: (1) to file an answer to prevent a default judgment *and* (2) to file a motion for new trial within the prescribed time period. *Hanks*, 378 S.W.2d at 34.

In *Hanks*, the bill of review plaintiff had not filed a timely answer and had been deprived of his right to file a motion for new trial because of misinformation received from the court clerk. *Id.* at 33. The *Hanks* court determined that a plaintiff's lost opportunity to file a motion for new trial, caused by official misinformation, was the proper subject of a bill of review, even if the plaintiff was negligent in failing to answer.[6] *Id.* at 34. In its analysis, the court noted that the bill of

---

4. At issue in *Hanks v. Rosser* was whether the bill of review plaintiff, Hanks, had been deprived of his right to file a motion for new trial due to official misinformation. In its review of Hanks's entitlement to a bill of review, the supreme court incorporated into its analysis the three requirements that must be shown by a movant to obtain a new trial, as found in *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939), to wit: (1) the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident, (2) provided the motion for new trial sets up a meritorious defense, and (3) is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. 378 S.W.2d 31, 34–35 (Tex.1964). *Hanks* also stands for the proposition that, if the bill of review plaintiff proves that misinformation given to him by a court official prevented his filing of a motion for new trial, he is excused from showing the wrongful con-

duct, fraud or accident of the opposite party. *Id.* As discussed herein, the bill of review plaintiff, who complains that he was deprived of his right to file a motion for new trial, must also show that he was not negligent in failing to file the motion. *See Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240, 246 (Tex.1974).

5. For an in-depth, comprehensive analysis of *Hanks v. Rosser*, which reconciles many of the perceived inconsistencies between *Hanks* and the other supreme court bill of review opinions that followed in its wake, we reference Roger S. Baugh, Jr. and Paul C. Sewell, *Equitable Bill of Review: Unraveling the Cause of Action That Confounds Texas Courts*, 48 Baylor L.Rev. 623 (1996).

6. In *Petro–Chemical*, the Supreme Court of Texas held that, in a bill of review proceeding, the clerk's failure to send notice of judgment is treated the same as if the clerk provided misinformation. 514 S.W.2d at 244.

review plaintiff had been negligent in failing to timely answer the suit, but "not in his failure to timely file a motion for new trial." *Id.* Referring to the plaintiff's negligence in failing to answer, the *Hanks* court concluded that such negligence was not of "controlling importance" and that the plaintiff "was nevertheless entitled to file a motion for new trial." *Id.*

Applying *Hanks,* we conclude that, even if Clarendon was negligent in failing to answer, Thompson did not demonstrate that such negligence was of "controlling importance" with regard to Clarendon's failure to file a motion for new trial. *See id.* We hold that Thompson's first ground for summary judgment, that Clarendon was negligent in failing to file its answer, does not support summary judgment in this case.

**2. Did Clarendon present evidence that its failure to file its answer was not intentional or as a result of conscious indifference?**

█ In its second ground for summary judgment, Thompson raised a no-evidence challenge to the issue of whether Clarendon acted intentionally or with conscious indifference in failing to answer the suit. *See* Tex.R. Civ. P. 166a(i). On appeal, Clarendon contends that it filed sufficient evidence to prove this element.

Clarendon offered the affidavit of Virgil Miranda, who averred, in part, as follows:

> I was a mail clerk for Clarendon National Insurance Company.... I have been told that in December of 2002, I signed for a Federal Express package containing a lawsuit filed by Dennis Ross Thompson against Clarendon National Insurance Company. Due to the volume of mail we received and because so much time has passed, I do not have any recollection of receiving the document. When I received a document in the mail

room, my job was to take steps to see that the document was delivered to the appropriate individual. While I do not recall what happened to Mr Thompson's lawsuit papers, I can state that if Mr Thompson's lawsuit was not delivered to the appropriate individual, this was a mistake. I would never have ignored or disregarded any lawsuit against Clarendon National Insurance Company.

Clarendon also presented documentation from Federal Express indicating that Miranda had signed for the package containing Thompson's lawsuit information.

Clarendon also offered the affidavit of Alex Prophete, the office services manager, who supervised the mail room in December of 2002. Prophete stated that, at that time, there were three employees who worked in Clarendon's mail room, including him and Miranda. According to Prophete, the mail room would receive three of four buckets or mail on Mondays, containing 250–300 pieces of mail. On other days of the week, the mail room would receive one bucket of mail. Prophete explained that the mail room employees knew that if a piece of mail pertained to a legal matter, then it was delivered to the office of Eduardo Simeon, Jr., the legal administrative manager for Clarendon.

Prophete stated that it was his "understanding" that on December 20, 2002, Miranda signed for a package containing a lawsuit filed by Thompson against Clarendon and Americomp Billings Solutions. Prophete explained that it was then Miranda's responsibility, pursuant to Clarendon's procedure, to immediately forward the suit to Simeon. Prophete summed up what had occurred as follows:

> The lawsuit never reached Mr. Simeon due to a mistake committed by Mr. Miranda. Neither Mr. Miranda nor anyone in the mail department would ever ignore or consciously disregard a lawsuit

against [Clarendon]. Mr. Miranda was a *competent mail clerk and conscientiously conducted his job duties. While employed as a mail clerk, he never ignored or intentionally misplaced the mail.* This was obviously a mistake on the part of a mail room clerk in either sending the lawsuit to an incorrect location or misplacing it.

In addition, Clarendon filed Simeon's affidavit, in which Simeon explained that, as Clarendon's legal administrative manager, any lawsuit received by Clarendon was forwarded to him. Simeon determined which insurance policy applied and then forwarded it to the appropriate third-party administrator for handling, which in this case was Americomp Billings Solutions.

Simeon stated that it was his understanding that the lawsuit had been received by Miranda, a mail room clerk. Simeon testified that "Mr. Miranda never forwarded the lawsuit papers to me.... [H]ad the mail room correctly delivered Mr. Thompson's lawsuit to me in December of 2002, I would have promptly forwarded that lawsuit to Americomp Billings Solutions." Simeon explained that, when he forwarded legal papers to a third-party administrator, a notation was made in a "legal log" in his office. Simeon testified that he checked the log and found no notation that Thompson's suit had been received or forwarded by his office.

Simeon offered the following conclusion regarding the matter:

Based upon the above, it is clear that Virgil Miranda, a mail clerk in the mail room, received the lawsuit in December of 2002, but mistakenly did not forward it to my office. This obviously prevented me from forwarding the suit to the appropriate TPA, Americomp Billings Solutions, Inc. for handling and most importantly, resulted in the failure to have an answer to the lawsuit timely filed. [Clarendon] did not ignore, nor was it consciously indifferent, to the filing of Mr. Thompson's lawsuit. This was just a mistake.

■■■ We must determine whether Clarendon presented more then a scintilla of evidence that its failure to answer was neither intentional nor a result of conscious indifference. Thompson objected that much of the testimony in the affidavits was "conclusory."[7] Thompson asserted in the trial court that the affidavits do not sufficiently detail how the suit papers were lost.

Although the affidavits contain some conclusory statements, they also contain testimony explaining Clarendon's procedures for handling service papers generally and what is known about the Thompson papers specifically. The Federal Express documents show that Miranda did receive

7. Thompson also lodged a hearsay objection to Miranda's affidavit testimony and objected that many statements in all three of the affidavits were not based on personal knowledge. The record does not show that Thompson obtained a ruling on these objections. If an objection is to the form, not the substance, of an affidavit, failure to obtain a ruling does not preserve the objection. *Harris v. Spires Council of Co–Owners*, 981 S.W.2d 892, 897 (Tex. App.-Houston [1st Dist.] 1998, no pet.). An objection that an affidavit is not based on personal knowledge is one of form. *Id.* at 896. Thus, Thompson's lack of personal knowledge objection was not preserved. Similarly, by not obtaining a written ruling, Thompson did not preserve his objections that Miranda's affidavit contained hearsay. *Green v. Indus. Specialty Contractors*, 1 S.W.3d 126, 130 (Tex.App.-Houston [1st Dist.] 1999, no pet.). However, conclusory statements in affidavits are errors of substance and not form, and such defect is not waived on appeal by failure to object in the trial court, or as in this case, to obtain a ruling on the objection. *See Ramirez v. Transcon. Ins. Co.*, 881 S.W.2d 818, 829 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

the suit papers. The evidence offered by Clarendon pinpoints that the break in the chain of forwarding the documents occurred in the mail room.

As aptly stated by the supreme court in a factually similar case, "People often do not know where or how they lost something—that is precisely why it remains 'lost.'" *Fidelity & Guar. Ins. Co. v. Drewery*, 186 S.W.3d 571, 575 (Tex.2006). We are mindful that the "standard is one of intentional or conscious indifference—that the defendant knew it was sued but did not care." *Id.* at 575–76. The excuse offered for failing to answer "need not be a good one to suffice." *Id.* at 576.

The evidence offered by Clarendon was not conclusory. Rather, it constituted more than a scintilla of evidence to show that Clarendon's failure to answer was not intentional or as a result of conscious indifference. We hold that Thompson's assertion that Clarendon presented no evidence that it did not act intentionally or with conscious indifference in failing to answer cannot support summary judgment.

**3. Was it established, as a matter of law, that no official mistake occurred?**

**a. Notice of Interlocutory Default Judgment**

Referencing Rule of Civil Procedure 239a, Clarendon alleged in its amended bill of review petition that it never received notice of judgment. *See* Tex.R. Civ. P. 239a ("Immediately upon the signing of the [default] judgment, the clerk shall mail written notice thereof to the party against whom the judgment was rendered ..., and note the fact of such mailing on the docket."). Clarendon contended that its non-receipt of notice deprived it of the opportunity to file a motion for new trial.

In his motion for summary judgment, Thompson asserted that Clarendon's bill of review must fail because the evidence showed, as a matter of law, that Clarendon had received notice of the default judgment. To support his claim, Thompson offered the affidavit of the civil court supervisor for the district clerk's office, Marcella R. Harris, who testified that she was familiar with the "policies, practices, and procedures" used by the clerk's office to send out notices. She stated that she was also familiar with the Harris County Justice Information Management System ("JIMS") and the civil district clerks' use of that system.

Attached to Harris's affidavit was a "a certified copy of JIMS Civil Court Activity sheet" from the default-judgment proceeding. Harris testified that the activity sheet reflected

that on May 05, 2003, an entry was made in JIMS system that the court entered an interlocutory default judgment against Clarendon National Insurance Company. Once such entry is made in JIMS, the system automatically generates a formal notice of the court's action. These notices are addressed to persons listed in JIMS who are connected with the litigation and will reflect who prevailed in the case and against whom the judgment was rendered. The Clerk's Office uses first class mail to send these notices to all the parties in the case.

Thompson presented evidence that the address shown in JIMS for Clarendon was its proper address. Thompson also presented evidence that he had received notice of the default judgment from the clerk's office.

In response, Clarendon offered the affidavits of three Clarendon employees, who testified that Clarendon had not received notice of judgment. Each employee described his position with Clarendon and

detailed the basis for his knowledge with respect to non-receipt of notice of any judgment in Thompson's suit.

 Though Clarendon would have the burden at trial to show official mistake, the burden of proof on this traditional summary judgment point falls on Thompson. *See* Tex.R. Civ. P. 166a(c); *Nixon*, 690 S.W.2d at 548. In this context, we are mindful that we take as true all evidence favorable to Clarendon, and we indulge every reasonable inference and resolve any doubts in its favor. *See Joe*, 145 S.W.3d at 157. Here, Clarendon's evidence denying receipt raised an issue of material fact on the issue of whether the clerk sent notice of judgment, which could only be resolved by the fact finder. *See Texaco, Inc. v. Phan*, 137 S.W.3d 763, 767 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *see also Maxey v. Morrison*, No. 01–88–00166–CV, 1989 WL 66231, at *4 (Tex.App.-Houston [1st Dist.] June 8, 1989, writ denied) (not designated for publication) (reversing summary judgment because issue of material fact was raised by bill of review petitioner when he offered affidavit stating that he had never received notice of judgment, even though summary judgment movant had offered affidavit from district clerk stating that she had sent notice). Thus, we hold that Thompson's claim that no official mistake occurred because Clarendon received the interlocutory default judgment does not support summary judgment.

### b. Notice of Final Judgment

In its response to Thompson's motion for summary judgment and in its second amended bill of review, filed after Thompson filed his motion for summary judgment, Clarendon also claimed that it had not received notice of the final judgment, as required by Rule of Civil Procedure 306a(3). *See* Tex.R. Civ. P. 306a(3) ("When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed."). Clarendon pointed out in its response that Thompson had offered no evidence to show that Clarendon had received a Rule 306a(3) notice.

 In his reply, Thompson asserted that Clarendon was not entitled to a Rule 306a(3) notice because "*[a] signing of a non-suit is not a final judgment nor is it an appealable order.*" (Emphasis in original.) In contrast, Clarendon correctly asserted that the interlocutory default judgment against it did not become final until the trial court signed the order of nonsuit. *See Sheraton Homes, Inc. v. Shipley*, 137 S.W.3d 379 (Tex.App.-Dallas 2004, no pet.). "When a judgment is interlocutory because unadjudicated parties or claims remain before the court, and when one moves to have such unadjudicated claims or parties removed by severance, dismissal, or nonsuit, the appellate timetable runs from the signing of a judgment or order disposing of those claims or parties." *Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex.1995) (citations omitted). Importantly, the time period in which Clarendon was required to file its motion for new trial did not begin to run until the trial court signed the order on the nonsuit on June 10, 2003. *See Wembley v. Herrera*, 11 S.W.3d 924, 928 (Tex.1999).

Thompson also asserted in his reply that Clarendon was not entitled to notice of the order granting his nonsuit because Clarendon previously received notice of the interlocutory default judgment. Without deciding its merit, this argument fails because, as discussed, an issue of material fact exists regarding whether Clarendon received notice of the default judgment.

 Thompson further claimed that summary judgment was justified because Clarendon had been served with process and was aware of the suit; thus, actual notice was not required. We disagree. Rule 239a and Rule 306a(3) required the clerk to send notice of judgment to Clarendon. *See* Tex.R. Civ. P. 239a, 306a(3). In addition, the supreme court has held that when the other conditions required for bill of review are satisfied, a bill of review may be predicated on the clerk's failure to send the notice of judgment. *Petro–Chemical*, 514 S.W.2d at 245. This is in line with the recognition by the supreme court in *Hanks* that a defendant in a suit has two rights and remedies: (1) to file an answer to prevent a default judgment *and* (2) to file a motion for new trial within the prescribed time period. *Hanks*, 378 S.W.2d at 34.

**4. Conclusion Regarding Appeal of Summary Judgment**

Based on the reasons discussed above, we hold that none of the grounds raised by Thompson can support summary judgment in this case. Thus, we hold that the trial court erred in granting summary judgment against Clarendon on its request for bill of review.

We sustain Clarendon's first issue.[8]

**Appeal from Denial of Request for Temporary Injunction (No. 01–06–00049–CV)**

In its second appeal, Clarendon contends in one issue that the trial court abused its discretion by denying its request for temporary injunction.

As mentioned, Clarendon filed a petition for temporary injunction the same day that it filed its original bill of review petition. In the temporary injunction petition, Clarendon requested the trial court to enjoin Thompson from executing on the default judgment during the pendency of the bill of review proceeding. The trial court did not decide the request for temporary injunction at that time, but apparently allowed Clarendon to post a $300,000 bond while the bill of review proceeding was pending.

After the trial court granted Thompson's motion for summary judgment on Clarendon's request for bill of review, Clarendon amended its petition for temporary injunction. Clarendon alleged that it had satisfied all of the requirements for a bill of review. It contended that, should Thompson be allowed to execute on the default judgment, it had "reason to believe" that Thompson would "spend and/or otherwise dispose of such funds" before Clarendon had obtained an "order vacating and setting aside the default judgment." Clarendon alleged that "[a]t that point, it will be impossible for [Clarendon] to recoup the funds that [Thompson] will have received via execution" of the default judgment. Clarendon asserted that the temporary injunction was necessary while its appeal of the summary judgment in the bill of review proceeding was pending.

Following an evidentiary hearing, the trial court denied Clarendon's request for temporary injunction. Clarendon brought this appeal asserting that the trial court abused its discretion in denying its request.

**A. Standard of Review and Governing Legal Principles**

 Whether to grant or deny a temporary injunction is a decision committed

---

8. Because we sustain its first issue, we need not reach Clarendon's second issue challenging the summary judgment.

to the sound discretion of the trial court and will be reversed only for a clear abuse of that discretion. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002).

A temporary injunction is an extraordinary remedy that does not issue unless the party seeking relief pleads and proves three specific elements: (1) a cause of action, (2) a probable right to recover on that cause of action, and (3) a probable, imminent, and irreparable injury in the interim. *Id.* An injury is irreparable if the party seeking the writ cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Id.* Probable injury includes the consideration of whether there is no adequate remedy at law for damages. *See T–N–T Motorsports, Inc. v. Hennessey Motorsports,* 965 S.W.2d 18, 24 (Tex.App.-Houston [1st Dist.] 1998, no pet.).

When we determine whether the trial court abused its discretion, we may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *Butnaru,* 84 S.W.3d at 204; *T–N–T Motorsports,* 965 S.W.2d at 21. Accordingly, we review the evidence submitted to the trial court in the light most favorable to that court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *CRC–Evans Pipeline, Int'l, Inc. v. Myers,* 927 S.W.2d 259, 262 (Tex.App.-Houston [1st Dist.] 1996, no writ).

**B. Analysis of Whether Trial Court Abused its Discretion**

Thompson responded to Clarendon's request for temporary injunction by asserting, *inter alia,* that Clarendon had an adequate remedy at law. That is, Clar-

endon could file suit against Thompson to recover the monies paid to him under the default judgment in the event that Clarendon later prevailed on its bill of review. Clarendon maintained that it would never be successful in recovering the amount of the default judgment from Thompson because he was without financial means to satisfy such a judgment.

In this regard, Clarendon introduced into evidence a stipulation showing that Thompson had an annual income below $75,000, had no bank account with a balance in excess of $10,000, and owned no non-exempt property worth in excess of $50,000. Based on this evidence, Clarendon asserted that should Thompson execute on the $251,208.67 default judgement, it had "established" that it would suffer a probable, imminent, and irreparable injury. We disagree.

Here, the trial court could have concluded that Clarendon had not shown an irreparable injury. Specifically, the trial court could have found that Clarendon could be adequately compensated in damages and that the damages could be measured with certainty. The trial court also could have concluded that, despite Thompson's current financial status, once he recovered the sum due under the default judgment, he would, in fact, have adequate money to satisfy any judgment that Clarendon may obtain. Clarendon offered no evidence to support its allegation that Thompson would quickly dissipate the default judgment monies once he received them.

We hold that Clarendon has not shown that the trial court abused its discretion by denying its request for temporary injunction.

We overrule Clarendon's sole issue.

**Request For Writ of Injunction (No. 01–06–00450–CV)**

Clarendon has filed a petition for writ of injunction in this Court, seeking to enjoin

the disbursement of its funds to Thompson, which the trial court placed in receivership to satisfy the default judgment. We deny Clarendon's request for writ of injunction and lift our stay of May 17, 2006.

### Summary of Dispositions

We reverse the trial court's judgment in appellate cause number 01–05–01071–CV and remand for further proceedings. We affirm the trial court's judgment in appellate cause number 01–06–00049–CV. We deny Clarendon's petition for writ of injunction and lift our stay of May 17, 2006 in cause number 01–06–00450–CV.