Opinion issued February 22, 2007





 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00488-CV






MARK III SYSTEMS, INC., Appellant


V.


SYSCO CORPORATION, Appellee






On Appeal from the 295th District Court

Harris County, Texas

Trial Court Cause No. 2003-25677A






MEMORANDUM OPINION

 Appellant, Mark III Systems, Inc. ("Mark III"), appeals the trial court's
rendition of summary judgment in favor of appellee, Sysco Corporation ("Sysco"). 
In 14 issues, Mark III challenges several of the possible grounds for the trial court's
rendition of summary judgment against it and argues that issues of fact were raised
as to each of its claims against Sysco. In three additional issues, Mark III argues that
the trial court erred in (1) denying its objections to Sysco's summary judgment
evidence and (2) granting Sysco's objections to Mark III's summary judgment
evidence. We affirm. Background

A. The Parties and Their Dealings

 In July of 2001, Sysco, a marketer and distributor of food service products in
North America, issued a Request for Proposal ("RFP") seeking a vendor for IBM p-series and i-series products and services. The RFP was sent to several companies,
including Mark III and Business Integrators, Inc. ("BI").

 According to Mark III's statement of facts, at the time Sysco's RFP was issued,
Mark III and BI were involved in a business relationship in which the two companies
shared information and customers. The relationship between Mark III and BI was
formalized in a General Products and Service Agreement ("GPS Agreement"), which
established a procedure for recruiting new business by offering a more comprehensive
line of products and services through the joint efforts of the two companies. 
Although Sysco was never made aware of the GPS agreement, Mark III alleges that
it was pursuant to this agreement that the two companies submitted a joint proposal
in response to Sysco's RFP. In the joint proposal, Mark III offered discount pricing
on p-series products and BI offered to supply Sysco with i-series products. 

 Leslie Powell, CEO of Mark III, testified by deposition that, before selecting
its vendors, Sysco asked the two companies to draft a document stating that they
would work together as a single service provider. Mark III and BI complied and sent
Sysco a letter stating that (1) Powell would serve as a single point of contact for any
issues that might arise and (2) both companies understood that, "if there [were] any
issues with either company that [could not] be resolved to [Sysco's] satisfaction, it
would be grounds for both companies to lose [Sysco's] business." This letter is
referred to by Mark III as the "letter agreement" and was signed by Powell and Bob
Baugh, President of BI. 

 Approximately one month after it received the letter agreement, Sysco sent an
email informing the companies that had responded to the RFP of its decision to use
Mark III as its p-series vendor and BI as its i-series vendor. In relevant part, the email
stated:

You should be proud. All the presentations were very informative and
enlightening. Each company had their [sic] strengths and areas of
expertise. However, after several weeks of discussions, the Sysco
Corporation Selection Committee has selected Business Integrators as
our IBM business partner for the i-series and Mark III as the IBM
business partner for the p-series. 


After sending this email, Sysco submitted purchase orders to Mark III and BI for the
remainder of 2001 and the majority of 2002. Mark III alleges that Sysco had no
complaints about the services it was provided during this time. 

 According to Powell's affidavit testimony, BI's recruiting division placed Clive
Huckins at Sysco as the manager of all p-series and i-series projects involving Mark
III and BI in late 2002. After obtaining this position, Huckins terminated several
Sysco employees and replaced them with personnel obtained through BI's recruiting
division. In February of 2003, he requested a meeting with Mark III. At the meeting,
Huckins informed Mark III that he believed Sysco could acquire better pricing terms
if it purchased all of its equipment from one IBM provider, namely BI. BI then
informed Mark III that it would be handling a project for Sysco as a single IBM
business partner, rather than together with Mark III. Subsequent to this solo project,
BI began taking on other opportunities at Sysco without Mark III's approval. 

 Eventually, Mark III was informed that Sysco had elected to purchase all of its
computer equipment from BI because BI was able to provide better pricing. 
According to Powell, BI was able to underbid Mark III only because Huckins
provided BI with the pricing and configuration quotes Mark III originally submitted
to Sysco. Powell conceded that Sysco had no knowledge of any agreement between
Mark III and BI to keep pricing information confidential. Powell further conceded
that both Mark III and BI reviewed all of the information, including the pricing
discounts, that was provided to Sysco in their joint response to the RFP. Sysco
terminated its relationship with Mark III and continued its relationship with BI. 

B. The Lawsuit and Summary Judgments 

 Mark III filed suit against both BI and Sysco. Its initial allegations against
Sysco included causes of action for (1) breach of contract, (2) tortious interference
with business contracts and relationships, (3) conspiracy to breach BI's fiduciary duty
and aiding and abetting BI's breach of fiduciary duty, and (4) spoliation of
documents. Sysco responded by filing its first traditional and no-evidence motion for
summary judgment, attacking each of the causes of action raised in Mark III's sixth
amended petition. Before the trial court ruled on Sysco's first motion for summary
judgment, however, Mark III filed its seventh amended petition alleging a new claim
that Sysco participated in and assisted with BI's (1) breach of fiduciary duty, (2)
breach of duty of good faith and fair dealing, (3) misappropriation of trade secrets,
(4) tortious interference, and (5) fraudulent conduct. The trial court granted Sysco's
first motion for summary judgment in December of 2004, disposing of only those
claims asserted by Mark III in its sixth amended petition. 

 Mark III then filed an eighth and ninth amended petition, to which Sysco
responded with a second, third, and fourth motion for summary judgment. No action
was taken by the trial court on Sysco's second motion for summary judgment. The
third and fourth motions attacked each of Mark III's remaining claims. The fourth
motion prayed for final summary judgment and severance. The trial court granted
Sysco's third and fourth motions for summary judgment and severance in April of
2005. Together with the December 2004 order granting Sysco's first motion for
summary judgment, the trial court's order finally disposed of all causes of action
asserted by Mark III against Sysco. Mark III filed this appeal. 

Summary Judgment

A. Standard of Review

 Sysco sought both traditional and no-evidence summary judgments in the trial
court. The two forms of summary judgment invoke different standards of review. 
Compare Tex. R. Civ. P. 166a(c), with Tex. R. Civ. P. 166a(i). The movant for a
traditional summary judgment must show that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); 
Clarendon Nat. Ins. Co. v. Thompson, 199 S.W.3d 482, 486 (Tex. App.--Houston
[1st Dist.] 2006, no pet.). That is, a defendant movant must conclusively negate at
least one essential element of each of the plaintiff's causes of action or, alternatively,
must conclusively establish each element of an affirmative defense. Sci. Spectrum,
Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Thompson, 199 S.W.3d at 486. 
Evidence is conclusive only if reasonable persons could not differ in their
conclusions. City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005). Where the
defendant establishes its right to summary judgment as a matter of law, the burden
shifts to the plaintiff to present evidence sufficient to raise a genuine issue of material
fact. Thompson, 199 S.W.3d at 486-87. If the plaintiff does so, summary judgment
is precluded. Id.

 In contrast, a party moving for a no-evidence summary judgment, must assert
only that, after adequate time for discovery, there is no evidence of one or more
essential elements of a claim or defense on which the non-movant has the burden of
proof at trial. Tex. R. Civ. P. 166a(i). Summary judgment is precluded if the non-movant then produces more than a scintilla of evidence raising a fact issue on the
challenged elements. See id; Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d
167, 172 (Tex. 2003). More than a scintilla of evidence exists if the evidence would
allow reasonable and fair-minded people to differ in their conclusions. Id. Less than
a scintilla of evidence exists when the evidence is so weak as to do no more than
create a mere surmise or suspicion of a fact. Id. 

 Under both the traditional and no-evidence standards of review, we take as true
all evidence favorable to the non-movant, indulging every reasonable inference and
resolving any doubts in the non-movant's favor. Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 157 (Tex. 2004) (traditional summary judgment); King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (no-evidence summary
judgment). When, as here, a summary judgment does not specify the grounds on
which it was granted, we will affirm the judgment if any one of the theories advanced
in the motion is meritorious. Joe, 145 S.W.3d at 157. 


B. Breach of Contract

 In its first through fourth issues, Mark III argues that summary judgment on its
breach of contract claim was improper because the summary judgment evidence
raised a fact issue as to whether: (1) there was a valid contract between Mark III and
Sysco; (2) the terms of the alleged agreement were sufficiently definite; (3) the
agreement was enforceable because it was at-will; and (4) enforcement was barred by
the Statute of Frauds. (1) We disagree. 

 We begin with Mark III's second issue-that its summary judgment evidence
raised a fact issue as to whether the terms of the Sysco agreement were sufficiently
definite. To be legally binding, a contract must be sufficiently definite in its terms. 
See T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992). 
"The rules regarding indefiniteness of material terms of a contract are based on the
concept that a party cannot accept an offer so as to form a contract unless the terms
of that contract are reasonably certain." Fort Worth Indep. Sch. Dist. v. City of Fort
Worth, 22 S.W.3d 831, 846 (Tex. 2000) (quoting Texas Oil Co. v. Tenneco Inc., 917
S.W.2d 826, 830 (Tex. App.--Houston [14th Dist.] 1994). If an agreement is so
indefinite that a court cannot determine the legal obligations and liabilities of the
parties, it is not an enforceable agreement. Moore v. Dilworth, 142 Tex. 538, 179
S.W.2d 940, 942 (1944).

 Mark III asserts that its joint presentation with BI, the letter agreement, and
Sysco's August 2001 email, which confirmed Mark III and BI as its IBM providers, 
collectively represent its agreement with Sysco. In its briefing, however, Mark III
argues that its summary judgment evidence "shows that the terms of the letter
agreement were the conditions upon which Sysco agreed to appoint Mark III and BI
as its single IBM business partner." In its entirety, the letter states: 

Dear Mike, 


Thank you for allowing Mark III Systems and Business Integrators the
opportunity to make our case for being your IBM business partner. We
feel that we add value that no other business partner or IBM direct can
provide. 


We would like to offer Leslie Powell as a single point of contact for any
issues that may arise. If Leslie is not available, Bob Baugh will be her
back-up. Our contact information is as follows:


[contact information omitted]


We understand that Mark III Systems and Business Integrators are
partnering as a single solution provider. Therefore, we also understand
that if there are any issues with either company that cannot be resolved
to your satisfaction, it would be grounds for both companies to lose your
business.


Thank you again for your time. Please call either of us if you have any
questions. 


Sincerely, 


___________________ ___________________

Leslie Powell Bob Baugh 

 Mark III emphasizes the statement in the letter that Mark III and BI
"[understood] that if there [were] any issues with either company that [could not] be
resolved to [Sysco's] satisfaction, it would be grounds for both companies to lose
[Sysco's] business." According to Mark III, this language represents a promise on
the part of Sysco to fire both companies if it fired either company. Even if we assume
Mark III's argument that the letter represents the conditions upon which Sysco agreed
to hire Mark III and BI is correct, the text of the letter does not define the legal
obligations and liabilities of the parties. In fact, the letter fails to impose any legal
obligations or liabilities on Sysco. No signature or acknowledgment by a Sysco
representative appears on the document. In addition, the letter lacks any indication
of the duration of the agreement, the type or quantity of products to be purchased, the
terms of purchase, or any other information that would allow a court to discern the
obligations and liabilities of the parties. See T.O. Stanley Boot Co., 847 S.W.2d at
221. Consequently, we hold that the statements in the letter are so indefinite that the
letter does not constitute an enforceable agreement. In the absence of an enforceable
agreement, the trial court did not err in granting summary judgment on the breach of
contract claim. We overrule Mark III's second issue. 

 Because we dispose of the breach of contract claim by overruling Mark III's
second issue, we do not reach his first, third, or fourth issues. 

C. Tortious Interference

 In its fifth issue, Mark III argues that summary judgment on its tortious
interference claim was improper because there was more than a scintilla of evidence
that Sysco tortiously interfered with Mark III's business contract and relationship
with BI. We disagree. 

 In its motion for summary judgment, Sysco asserted that (1) there was no
evidence that Sysco tortiously interfered with Mark III's contract and relationship
with BI and, (2) even if there were some evidence of tortious interference, Sysco's
conduct was justified. (2) The elements of tortious interference with a contract are (1)
the existence of a contract subject to interference; (2) a willful and intentional act of
interference; (3) that was a proximate cause of the plaintiff's damages; and (4) actual
damage or loss. Swank v. Sverdlin, 121 S.W.3d 785, 800 (Tex. App--Houston [1st
Dist.] 2003, pet. denied). To be subject to liability, an actor must have knowledge
of the contract or relation with which he is interfering and of the fact that he is
interfering with the performance of that contract. See Restatement (Second) of
Torts §766 cmt. i; see also Steinmetz & Assocs., Inc. v.Crow, 700 S.W.2d 276,
277-78 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.) (noting that "one element
of a cause of action for interference with contract or business relation is that the
interferer had actual knowledge of the contract or business relation in question, or
knowledge of facts and circumstances that would lead a reasonable person to believe
in the existence of the contract or business relationship"). 

 Here, Mark III and BI had formalized their business relationship in the GPS
Agreement. Powell testified that Sysco was made aware of the GPS Agreement
through a conversation that she had with Roy Defee, a Sysco employee. Specifically,
Powell's affidavit states that 

Mike Fisher ("Fisher") at Sysco advised Mark III that to be a candidate
to get Sysco's business, Mark III needed to be able to provide services
for the iSeries. I advised Roy Defee ("Defee") at Sysco that Mark III
had an agreement and special relationship with an iSeries IBM business
partner known as BI and that Mark III and BI had worked jointly on
certain customer projects . . . . I did not provide Sysco with a copy of
the GPS Agreement nor discuss the terms of the GPS Agreement or
referral fees with Sysco. 

 

This testimony, however, was objected to as hearsay by Sysco, and the trial court
properly sustained the objection. (3) As such, it is not considered in our analysis. The
only other testimony from Powell regarding Sysco's knowledge of Mark III's contract
and relationship with BI is the following testimony from her deposition: 

Q. Could you identify that document, please?

 

A. That's-it's the general products and services agreement we
signed-Mark III signed with Business Integrators.


Q. Okay. Was this agreement ever provided to Sysco?

 

A. No, a copy of it I don't believe was, by- at least by Mark III.


Q. Okay. Or by BI, to your knowledge?

 

A. To my knowledge, no.


Q. And as part of the RFP process, were you required to provide any
agreement that you had- "you," meaning Mark III- with BI to
Sysco? 


A. No. 


 Additionally, in its summary judgment evidence, Sysco included the affidavit
of Jon Bryan, Chief Executive Officer and Chairman of BI. Bryan's affidavit
testimony indicates that:

[i]n terms of the General Products and Services Agreement, neither BI
nor Mark III provided this agreement to Sysco. Further, that Agreement,
including the terms and conditions, was never discussed with Sysco. 
The only explanation given to Sysco about the relationship between the
two companies was that both Mark III and BI would serve as vendors of
IBM Computer Systems, products, and services, and that we would
cooperate as needed to assure that Sysco's needs for support would be
met.

 The deposition testimony of Powell and the affidavit testimony of Bryan
indicates that Sysco had no knowledge of the agreement between Mark III and BI. 
Consequently, no fact issue was raised. Because no fact issue was raised, the trial
court did not err in granting summary judgment on Mark III's tortious interference
claim. We overrule Mark III's fifth issue.

D. Conspiracy

 In its seventh, eighth, and eleventh issues, Mark III argues that the trial court's
rendition of summary judgment was improper because there was more than a scintilla
of evidence that Sysco conspired with BI to (1) breach BI's fiduciary duty to Mark
III, (2) misappropriate Mark III's trade secrets, and (3) commit fraud against Mark
III. We disagree.

 To prevail on a civil conspiracy theory, Mark III had to establish the following
elements: (1) a combination of two or more persons; (2) the objective to be
accomplished is an unlawful purpose or a lawful purpose by unlawful means; (3) a
meeting of minds on the object or course of action; (4) one or more unlawful, overt
acts; and (5) damages as the proximate result. Ins. Co. of N. Am. v. Morris, 981
S.W.2d 667, 675 (Tex. 1998). Merely proving a joint "intent to engage in the conduct
that resulted in the injury" is not sufficient to establish a cause of action for civil
conspiracy. Triplex Commc'ns, Inc. v. Riley, 900 S.W.2d 716, 719 (Tex. 1995). 
Rather, "civil conspiracy requires specific intent" to agree "to accomplish an unlawful
purpose or to accomplish a lawful purpose by unlawful means.  Id. 

 Here, breach of fiduciary duty, misappropriation of trade secrets, and the
commission of fraud are the unlawful purposes or means that form the basis for Mark
III's conspiracy claims. Mark III offers the following as evidence of a conspiracy to
carry out these unlawful purposes: 

(1) After BI was appointed Sysco's IBM partner for the i-series
products, BI's CEO, Bryan, instructed BI's Vice President to take
over "the whole account" at Sysco; 


(2) Without Mark III's knowledge, BI placed Clive Huckins into a
position at Sysco where he was to supervise all of the decisions
regarding the vendors of the p-series and i-series products and
services;

 

(3) Huckins fired several Sysco employees under his management
and replaced them with personnel obtained through BI's
recruiting division;

 

(4) It was not until after Huckins began working at Sysco that Mark
III was informed that there were problems with the services that
it was providing Sysco; 


(5) Huckins then initiated efforts to replace Mark III as Sysco's p-series provider;


(6) Huckins ignored and refused to respond to Mark III's requests for
a meeting to disucss its relationship with Sysco;


(7) Huckins and other Sysco employees provided BI with Mark III's
pricing quotes and configurations for the p-series;

 

(8) Huckins requested that BI provide a price quote on the p-series
without Mark III's knowledge; and


(9) Huckins falsely represented that an IBM client representative had
recommended that Sysco chose BI for all of its computer needs.

 

 The majority of the conduct complained of here relates to the alleged
wrongdoings of BI and Huckins, not of Sysco. The only reference to wrongdoing on
the part of Sysco is the allegation that Sysco employees assisted Huckins in providing
BI with Mark III's pricing quotes and configurations for p-series products. As Mark
III conceded, through the testimony of Powell, Sysco had no knowledge of any
agreement between Mark III and BI to keep pricing information confidential. In
addition, as part of the joint presentation, BI reviewed all of the information provided
by Mark III in response to Sysco's RFP. 

 None of the evidence set forth above indicates a specific intent on the part of
Sysco to engage in an unlawful course of conduct. There is, thus, no evidence that
Sysco and BI ever achieved a meeting of the minds. Because a meeting of the minds
is an essential element of a cause of action for civil conspiracy, Mark III could not
sustain its claims that Sysco conspired to breach BI's fiduciary duty, to
misappropriate Mark III's trade secrets, and to commit fraud against Mark III. As
such, the trial court did not err in rendering summary judgment on Mark III's
conspiracy claims, and we overrule Mark III's seventh, eighth, and eleventh issues. 

 Because we overrule Mark III's seventh issue-whether Sysco conspired with
BI to breach BI's fiduciary duty to Mark III, we need not reach Mark III's sixth
issue-whether a fiduciary relationship existed between BI and Mark III. 


E. Participating and Assisting

 In its ninth issue, Mark III argues that the trial court's rendition of summary
judgment, on the grounds that Texas courts do not recognize a cause of action for
"participating and assisting," was erroneous. If a cause of action for "participating
and assisting" does exist in Texas, Mark III further argues, in its 10th and 12th issues,
that summary judgment was improper because there was more than a scintilla of
evidence that Sysco participated in and assisted with (1) the misappropriation of Mark
III's trade secrets and (2) the commission fraud against Mark III. We disagree.

 As authority for its assertion that a cause of action for "participating and
assisting" exists in Texas, Mark III directs us to a variety of cases addressing the
liability of joint tortfeasors generally. See Gaulding v. Celotex, 772 S.W.2d 66, 69
(Tex. 1989) (concert of action); Mabrey v. Sand Stream, Inc., 124 S.W.3d 302, 317
(Tex. App.--Fort Worth 2003, no pet.) (aiding and abetting breach of fiduciary duty);
Toles v. Toles, 113 S.W.3d 899, 912 (Tex. App.--Dallas 2003, no pet.) (aiding and
abetting breach of fiduciary duty); Kline v. O'Quinn, 874 S.W.2d 776, 786-87 (Tex.
App.--Houston [14th Dist.] 1994, writ denied) (knowing participation in breach of
fiduciary duty);  A.W. Crisp, Jr. v. S.W. Bancshares Leasing Co., 586 S.W.2d 610,
615 (Tex. App.--Amarillo 1979, writ ref'd n.r.e.) (aiding and abetting fraud). Mark
III offers no authority, and we found none, that embraces a cause of action for
participating and assisting with the misappropriation of trade secrets and commission
of fraud. We decline to adopt such a cause of action today. 

 Because "participating and assisting" is not a recognized cause of action in the
context of misappropriation of trade secrets and fraud, the trial court did not err in
granting summary judgment on those claims. We overrule Mark III's ninth, 10th, and
12th issues. 

G. Negligent Misrepresentation 

 In its 13th issue, Mark III argues that summary judgment on its claim of
negligent misrepresentation was improper because its summary judgment evidence
offered more than a scintilla of evidence to support the claim. Specifically, Mark III
argues that a fact issue was raised as to whether Sysco misrepresented its intentions
to deal with Mark III and BI as one company and to terminate its relationship with
both companies if it decided to terminate its relationship with one ("fire one, fire
both"). We disagree. 

 In its motion for summary judgment, Sysco asserted that there was no evidence
of any of the elements of a negligent misrepresentation claim. The elements of a
negligent misrepresentation claim are: (1) the defendant made a representation in the
course of its business, or in a transaction in which it had a pecuniary interest; (2) the
defendant supplied false information for the guidance of others in their business; (3)
the defendant did not exercise reasonable care or competence in obtaining or
communicating the information; and (4) the plaintiff suffered pecuniary loss by
justifiably relying on the representation. Fondren Constr. Co., Inc. v. Briarcliff
Housing Dev. Assocs., Inc., 196 S.W.3d 210, 218 (Tex. App.--Houston [1st Dist.]
2006, no pet.).

 According to Mark III, when it asked Mark III and BI to draft the letter
agreement, Sysco represented that it would fire both, if it fired one. As evidence that
it relied on the "fire one, fire both" representation, Mark III offers its agreement to act
with BI as Sysco's single business provider and points to numerous instances of
cooperation between the two companies to meet Sysco's product and services needs. 
Where Mark III's evidence fails, however, is in demonstrating that these actions were
taken in reliance on the "fire one, fire both" representation. Prior to responding to
Sysco's RFP, Mark III and BI entered into a formalized agreement to share
confidential business information and to combine their efforts to provide more
comprehensive services to their customers. Pursuant to this agreement, the two
companies responded jointly to Sysco's RFP. The actions taken by Mark III and BI
after they were selected as Sysco's business provider are consistent with the
formalized agreement and joint presentation. That is, there is no evidence that Mark
III undertook these actions in reliance upon the alleged "fire one, fire both"
representation. In fact, Jim Sorrells, a Mark III employee who was heavily involved
in the process of responding to Sysco's RFP, testified that Mark III would have
participated in the RFP process even if Sysco had not requested that the parties agree
to the "fire one, fire both" condition. 

 We hold that there is no evidence that Mark III relied on Sysco's alleged "fire
one, fire both" representation. Because reliance is an essential element of Mark III's
negligent misrepresentation claim, the trial court did not err in granting summary
judgment thereon. We overrule Mark III's 13th issue. 

H. Promissory Estoppel

 In its 14th issue, Mark III argues that summary judgment on its promissory
estoppel claim was improper. We disagree.

 In its motion for summary judgment, Sysco asserted that there was no evidence
of any of the elements of a promissory estoppel claim. The elements of a promissory
estoppel claim are: (1) a promise, (2) foreseeable reliance thereon by the promisor,
and (3) substantial reliance by the promisee to its detriment. See Beverick v. Koch
Power, Inc., 186 S.W.3d 145, 152 (Tex. App.--Houston [1st Dist.] 2005, pet.
denied). As discussed above in relation to Mark III's negligent misrepresentation
claim, there is no evidence that Mark III relied on Sysco's alleged "fire one, fire both"
representation. Because reliance is also an essential element of Mark III's promissory
estoppel claim, we hold that the trial court did not err in granting summary judgment
thereon. We overrule Mark III's 14th issue. 

Evidentiary Objections

 In its 15th through 17th issues, Mark III argues that the trial court erred in (1)
denying its objections to Sysco's summary judgment evidence and (2) granting
Sysco's objections to its summary judgment evidence. We disagree. 

 We review a trial court's decision to admit or exclude evidence for an abuse
of discretion. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex.
1998). To obtain reversal of a judgment based on error in the admission or exclusion
of evidence, an appellant must show that the trial court's ruling was in error and that
the error (1) probably caused the rendition of an improper judgment or (2) probably
prevented the appellant from properly presenting the case to the court of appeals. 
Tex. R. App. P. 44.1; see Owens-Corning Fiberglas Corp., 972 S.W.2d at 43. 
Reversible error does not usually occur in connection with rulings on questions of
evidence, unless the appellant can demonstrate that the whole case turns on the
particular evidence admitted or excluded. Interstate Northborough P'ship v. State,
66 S.W.3d 213, 220 (Tex. 2001).

 In the instant appeal, Mark III complains of the trial court's ruling on 48
objections. Nowhere in Mark III's briefing, however, is the harm resulting from these
rulings discussed. That is, no effort is made to meet Mark III's burden of showing
how the rulings on any one of these 48 objections probably caused the rendition of
an improper summary judgment. See Tex. R. App. P. 44.1. We overrule Mark III's
15th, 16th, and 17th issues. 


Conclusion

 We affirm the order of the trial court granting Sysco's motion for summary
judgment. 

 

 


 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.


 
1. 
 ' 
 
 
 - 
 
2. 
 ' 
 
3. ' ' 
 
 "" "
 
 " 
 
 -- " 
 " ' 
 '