Opinion issued May 27, 2021



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00372-CV

———————————

## KIRK DILLARD, Appellant

## V.

## SNC-LAVALIN ENGINEERS & CONSTRUCTORS INC., Appellee

On Appeal from the 215th District Court
Harris County, Texas
Trial Court Case No. 2018-70518

## O P I N I O N

Kirk Dillard sued his former employer, SNC-Lavalin Engineers & Constructors Inc., for disability discrimination, alleging that SNC-Lavalin unlawfully refused to reasonably accommodate his diabetes. SNC-Lavalin moved for summary judgment, which the trial court granted. On appeal, Dillard argues the

trial court erred because the evidence raises a genuine issue of material fact as to each essential element of his discrimination claim. We affirm.

## BACKGROUND

Dillard worked for SNC-Lavalin as a mechanical designer/checker. As part of his employment, Dillard was selected to take an alcohol test. Dillard took a breathalyzer test, which showed he had a blood alcohol content of 0.07. About 15 minutes later, Dillard took a second breathalyzer test, which showed he had a blood alcohol content of 0.05. Dillard requested an alternative test, either a urine or blood test, as an accommodation for his diabetes. SNC-Lavalin denied Dillard's request and later fired him for violating the company's alcohol policy.

Dillard sued, contending that SNC-Lavalin violated the Texas Commission on Human Rights Act by refusing to administer an alternative alcohol test. *See* TEX. LAB. CODE §§ 21.001–.556. Dillard alleged that as a diabetic, he could give false positive breathalyzer test results due to ketoacidosis—a potential effect of diabetes that can cause the production of acetones in the breath—and that his diabetes qualified as a disability requiring reasonable accommodation under the TCHRA.

SNC-Lavalin moved for traditional and no-evidence summary judgment in a single motion. SNC-Lavalin sought traditional summary judgment on the ground that the evidence showed a third-party administrator randomly selected Dillard for

2

alcohol testing and tested him. It also argued that Dillard could not prevail on his disability discrimination claim because he had no evidence that:

- his diabetes-related ketoacidosis qualified as a disability;

- he notified the third-party test administrator that he suffered from diabetes-related ketoacidosis; or

- his requested accommodation would have assisted him in performing the essential functions of his job.

In addition, SNC-Lavalin maintained that Dillard's requested accommodation was not a reasonable one because it would have required the third-party test administrator to violate its testing procedures as well as standards established by the Department of Transportation.

Dillard filed a response opposing summary judgment. The sole evidence he included with his response was his own declaration. In it, Dillard stated he had not been drinking when he took the breathalyzer tests that showed he had alcohol in his blood. He further stated he had been diagnosed with diabetes and required medication to control its symptoms. Dillard also explained that "a typical breathalyzer test may result in a false positive reading" because "a well-documented byproduct" of diabetes "is a state called ketoacidosis, which causes the production of acetones in the breath." Dillard stated that "after the breathalyzer test indicated alcohol was present" in his blood, he spoke with the person administering the test as well as two company supervisors to request a urine or blood test as a reasonable accommodation for his diabetes. But, Dillard stated, they denied his request.

3

SNC-Lavalin replied, contending that no evidence existed that diabetes-related ketoacidosis caused Dillard's positive test results, save Dillard's declaration, which SNC-Lavalin moved to strike as a sham.

The trial court did not strike Dillard's declaration as a sham but nonetheless granted summary judgment in SNC-Lavalin's favor. Dillard appeals.

## DISCUSSION

## Standard of Review

We review summary judgments de novo. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 683 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). When, as here, a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling under the no-evidence standard. *Id.*

After adequate time for discovery, a party may move for summary judgment on the basis that there is no evidence to support one or more essential elements of the nonmovant's claim. TEX. R. CIV. P. 166a(i); *Cypress Creek*, 548 S.W.3d at 684. The trial court must grant no-evidence summary judgment unless the nonmovant responds by producing competent summary-judgment evidence raising a genuine issue of material fact as to each challenged element. TEX. R. CIV. P. 166a(i); *Cypress Creek*, 548 S.W.3d at 684.

The standard of review mirrors legal-sufficiency review. *Cypress Creek*, 548 S.W.3d at 684. Thus, we will affirm a no-evidence summary judgment when there

is a complete absence of evidence of a vital fact, the court is barred by rules of law or evidence from giving weight to the sole evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence conclusively shows the opposite of a vital fact. *Id.* We consider the evidence in the light most favorable to the nonmovant. *Id.*

To obtain traditional summary judgment, a party must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). If the movant does so, then the burden shifts to the nonmovant to raise a genuine issue of material fact. *Vertex Servs. v. Oceanwide Houston*, 583 S.W.3d 841, 848 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

If a party objects to a summary-judgment declaration but does not obtain a ruling, it waives any complaint involving a defect in the declaration's form. *Clarendon Nat'l Ins. Co. v. Thompson*, 199 S.W.3d 482, 490 n.7 (Tex. App.— Houston [1st Dist.] 2006, no pet.). But a party may raise complaints involving defects in the declaration's substance, such as a complaint that the declaration is conclusory and thus no evidence, even if it did not obtain a ruling. *Id.*

Conclusory statements—those that do not supply the underlying facts supporting a given representation—do not raise an issue of fact precluding summary judgment. *Fortitude Energy v. Sooner Pipe*, 564 S.W.3d 167, 183 (Tex. App.—

Houston [1st Dist.] 2018, no pet.). Likewise, a declaration that merely repeats the allegations in the pleadings does not raise an issue of fact. *Id.*

## Applicable Law

The TCHRA prohibits employment discrimination on the basis of disability. LAB. §§ 21.051, 21.105. Under the TCHRA, "disability" means "a mental or physical impairment that substantially limits at least one major life activity" or "a record of such an impairment" or "being regarded as having such an impairment." *Id.* § 21.002(6). This includes an impairment that is episodic in nature but "substantially limits a major life activity when active." *Id.* § 21.0021(a)(2).

Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 21.002(11-a). Major life activities also encompass "the operation of a major bodily function," like "functions of the immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.*

In deciding whether an impairment substantially limits a major life activity, we must do so "without regard to the ameliorative effects of mitigating measures," including medication. *Id.* § 21.0021(b). More generally, we must construe the term disability "in favor of broad coverage of individuals" in employment-discrimination

6

suits "to the maximum extent allowed" by the applicable statutory provisions. *Id.* § 21.0021(a)(1).

It is unlawful for an employer subject to the anti-discrimination provisions of the TCHRA "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified" employee with a disability, unless the employer "demonstrates that the accommodation would impose an undue hardship on the operation of the business." *Id.* § 21.128(a).

To prevail on a claim that an employer failed or refused to make a reasonable accommodation, an employee-plaintiff must prove that:

(1) he has a disability as that term is statutorily defined;

(2) an employer covered by the statute had notice of his disability;

(3) with reasonable accommodation he could perform his job's essential functions; and

(4) his employer failed or refused to make such an accommodation.

*Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 439 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

Finally, in applying the anti-discrimination provisions of the TCHRA, we are mindful that one of their purposes is to implement the policies embodied in Title I of the Americans with Disabilities Act and its amendments, which address employment discrimination. LAB. § 21.001(3). Thus, federal decisions interpreting

the ADA may guide our interpretation of the TCHRA. *Primeaux v. Conoco, Inc.*, 961 S.W.2d 401, 403 n.2 (Tex. App.—Houston [1st Dist.] 1997, no writ).

## Analysis

In the trial court, SNC-Lavalin's no-evidence motion challenged the first three elements of Dillard's reasonable-accommodation claim—disability status, notice of disability, and the existence of a reasonable accommodation. On appeal, Dillard argues that he introduced more than a scintilla of evidence as to each element.

We disagree with Dillard. We address each challenged element in turn.

### *Disability Status*

Dillard argues that a genuine issue of material fact exists as to the first element of his claim, which is whether he is disabled. *See Donaldson*, 495 S.W.3d at 439. In support of this argument, Dillard relies on his own declaration, in which he makes the following statements concerning his diabetes:

> Sometime in 2016, I was diagnosed with Hyperglycemia (diabetes) and am required to take prescribed medication to control its symptoms.

Dillard does not provide any further details as to his impairment, including the impact it has on his daily life, job-related tasks, or health. He does not identify the type or severity of his diabetes, the medication he takes for it, the symptoms the medication controls, or what happens when his diabetes is uncontrolled. Nor is there any additional evidence in the record as to his diabetes, such as medical records.

8

Dillard argues that his declaration creates a fact issue because it shows that he has diabetes, a physical impairment that substantially limits a major life activity. He reasons that his diabetes limits a major life activity because such activities include the operation of a major bodily function, like endocrine function, which relates to the glandular production of hormones, and diabetes affects the pancreas's production of the hormone insulin. *See* LAB. § 21.002(11-a).

We agree that Dillard's representation that he has been diagnosed as a diabetic is some evidence he has this impairment. *See Donaldson*, 495 S.W.3d at 441 (plaintiff's testimony, if credited, is more than scintilla of evidence). We likewise acknowledge the TCHRA provides that endocrine function is a major life activity for purposes of determining whether an impairment is disabling. *See* LAB. § 21.002(11-a). But the record lacks evidence about the extent to which Dillard's diabetes affects his endocrine function, apart from a general statement that he must take an unidentified prescription medication to control unspecified symptoms. Dillard's general statement is insufficient to carry his summary-judgment burden, which requires him to show that his impairment substantially limits, not just affects, his endocrine function. *See id.* § 21.002(6). Here, there is no evidence that Dillard's diabetes substantially limits his endocrine function or another major life activity.

We previously have held that a plaintiff who asserts diabetes as a disability must introduce evidence that this impairment substantially limits a major life activity

9

to avoid summary judgment. In *Norwood v. Litwin Engineers & Constructors*, the plaintiff sued his employer for unlawful termination alleging that he was fired due to his diabetes. 962 S.W.2d 220, 222 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). His employer successfully moved for summary judgment on several grounds, including that the plaintiff was not disabled. *Id.* We reversed and remanded, holding that the plaintiff had introduced evidence that his diabetes substantially limited a major life activity. *Id.* at 224. Neither the ADA nor the TCHRA defined major life activity at the time. *Id.* Relying on the federal regulation implementing the ADA's substantial-limitation requirement, we concluded that the requirement turned on evidence of the impairment's nature and severity, duration, and long-term impact. *Id.* We then held that the plaintiff's evidence of the effects of diabetes on his health—loss of consciousness, apparent inebriation, incoherence, belligerence, vision impairment, circulatory problems—created a genuine issue of material fact as to whether his diabetes substantially limited a major life activity and thereby rendered him disabled under the TCHRA. *Id.*

*Norwood*, however, has in significant respects been superseded by statute. Since we decided *Norwood*, the ADA and TCHRA have both been amended to broaden their applicability. *See, e.g.*, *Cannon v. Jacobs Field Servs. N. Am.*, 813 F.3d 586, 590–91 (5th Cir. 2016) (discussing 2008 amendments to ADA and federal regulations implementing these amendments); *City of Houston v. Proler*, 437

10

S.W.3d 529, 533 n.17 (Tex. 2014) (noting that Texas Legislature amended relevant provisions of TCHRA to correspond to 2008 ADA amendments). These amendments clarify that the term "disability" shall be construed in favor of broad coverage of individuals to the maximum extent allowed by the terms of these laws. 42 U.S.C. § 12102(4)(A); LAB. § 21.0021(a)(1).

In conformity with this directive, the federal regulation implementing the ADA's substantial-limitation requirement now provides that it "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i); *see also* 42 U.S.C. § 12102(4)(B) (providing that substantial-limitation requirement "shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008"). An impairment qualifies as a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). This showing "usually will not require scientific, medical, or statistical analysis." *Id.* § 1630.2(j)(1)(v). Moreover, the impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 1630.2(j)(1)(ii). Though "not every impairment will constitute a disability" under the ADA, the substantial-limitation requirement "should not demand extensive analysis." *Id.* § 1630.2(j)(1)(ii)–(iii).

In addition, the federal regulation implementing the ADA's substantial-limitation requirement now lists several impairments that will "in virtually all cases" qualify a plaintiff as being disabled because "these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity" due to their "inherent nature." *Id.* § 1630.2(j)(3)(ii). With respect to these particular impairments, "the necessary individualized assessment" of disability status "should be particularly simple and straightforward." *Id.* Diabetes is included among these listed impairments due to its effect on endocrine function. *See id.* § 1630.2(j)(3)(iii) (listing deafness, blindness, intellectual disability, missing limbs or mobility impairments requiring wheelchair, autism, cancer, cerebral palsy, diabetes, epilepsy, HIV, multiple sclerosis, muscular dystrophy, major depressive disorder, bipolar disorder, PTSD, obsessive compulsive disorder, and schizophrenia). In contrast, when we decided *Norwood*, the interpretive guidance then in effect indicated a far higher degree of impairment was required for diabetes to be disabling; it stated that a diabetic "who without insulin would lapse into a coma would be substantially limited," and thus disabled, "because the individual cannot perform major life activities without the aid of medication." 962 S.W.2d at 224 (quoting prior version of guidance available at 56 Fed. Reg. 35,726, 35,741).

But despite the broadening of the ADA and TCHRA, both still require a plaintiff's impairment to substantially limit a major life activity to qualify as

12

disabling. 42 U.S.C. § 12102(1)(A); LAB. § 21.002(6). And while the federal regulation implementing the ADA's substantial-limitation requirement has liberalized the standard for assessing whether an impairment substantially limits a major life activity in general and has done so with respect to diabetes in particular, the regulation still mandates that an individualized disability assessment be made on the facts of each case, even those involving impairments that will virtually always be found to impose a substantial limitation. 29 C.F.R. § 1630.2(j)(1)(iv), (j)(3)(ii). Consistent with the requirement that courts make an individualized assessment based on the facts of a given case, federal courts require plaintiffs who assert diabetes as a disability to introduce some evidence that their diabetes substantially limits their endocrine function or another major life activity to qualify as disabled. *See, e.g.*, *Cloutier v. GoJet Airlines*, 311 F. Supp. 3d 928, 937–38 (N.D. Ill. 2018) (summary-judgment evidence showed plaintiff's diabetes substantially limited his endocrine function and thus qualified as disabling under ADA); *Levy v. N.Y. State Dep't of Envtl. Conservation*, 297 F. Supp. 3d 297, 319 (N.D.N.Y. 2018) (same).

The quality and quantity of evidence required to raise a fact issue as to whether diabetes substantially limits endocrine function is minimal. In *Cloutier*, for example, it was undisputed that the plaintiff's doctor diagnosed him as having diabetes and prescribed Metformin to treat the condition. 311 F. Supp. 3d at 938. It was further undisputed that the plaintiff experienced thirst and weight loss before he began using

13

Metformin. *Id.* The district court ruled that these facts sufficed to create a fact issue as to whether the plaintiff's diabetes substantially limited his endocrine function. *Id.* The district court reasoned that after the 2008 amendments liberalizing the ADA, no more was required to defeat the defendant's contention that the plaintiff was not disabled as a matter of law. *See id.* (distinguishing decisions applying more rigorous pre-amendment standard for substantial limitation). Similarly, in *Levy*, the court held evidence that a diabetic had to check his glucose levels and take insulin several times a day as well as exercise and regulate his food to ensure his glucose levels did not become dangerously high or low met the standard. 297 F. Supp. 3d at 319.

In contrast, Dillard's summary-judgment evidence does not cross the low threshold required to raise a genuine issue of material fact on disability. To do so, Dillard had to introduce some evidence of an impairment that substantially limits a major life activity. He relies solely on his own declaration, which states that he was diagnosed with diabetes and is "required to take prescribed medication to control its symptoms." Dillard's statements suffice to create a fact issue as to whether Dillard has an impairment, diabetes, and whether this impairment affects a major life activity, his endocrine function. But Dillard's statements do not create a fact issue as to whether his diabetes substantially limits his endocrine function. Nowhere in his declaration does Dillard identify a particular limitation that his diabetes imposes on his endocrine function, other than having to take an unidentified medication for

14

unspecified symptoms of unstated severity or significance. A factfinder could not reasonably infer that Dillard's diabetes substantially limits his endocrine function based on Dillard's vague description of his medical condition and the care it requires because this vague description does not make a substantial limitation any more probable than some lesser degree of limitation. *See Graham Cent. Station v. Pena*, 442 S.W.3d 261, 265 (Tex. 2014) (per curiam) (holding that factfinder could not draw inference from cursory testimony lacking in specificity because it could give rise to any number of inferences, none of which was more probable than another).

To hold otherwise on this record, we would have to decide that a plaintiff's use of any medication to treat any symptom of an impairment affecting a major life activity always amounts to a substantial limitation or that having to use any medication to treat any symptom of diabetes affecting endocrine function in particular does so. But neither proposition is compatible with the TCHRA.

The use or nonuse of medication, prescription or otherwise, does not determine whether an individual is disabled. *See Carter v. Pathfinder Energy Servs.*, 662 F.3d 1134, 1144 (10th Cir. 2011) (stating so with respect to "corrective devices"); *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001) (treating "medicine" as type of corrective device). Both the ADA and TCHRA require evidence of a substantial limitation. 42 U.S.C. § 12102(1)(A); LAB. § 21.002(6). We therefore must be mindful to distinguish between summary-

judgment evidence that an impairment substantially limits a major life activity and evidence that an impairment merely affects a major life activity to some lesser degree. *See B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016).

With respect to a medication used to treat an impairment, whether its use evidences that the impairment substantially limits a major life activity necessarily turns on the type of medication at issue and the nature of the symptoms it treats. *Compare Choleva v. New England Stair Co.*, No. 18-0756, 2020 WL 3976969, at *6–7 (D. Conn. July 14, 2020) (plaintiff prescribed Ritalin for ADHD did not create fact issue as to whether his ADHD substantially limited major life activities of learning, concentrating, and thinking via testimony that his symptoms included inability to focus and being easily distracted), *with Martin v. St. Luke's Episcopal Hosp.*, No. 13-0718, 2014 WL 4810303, at *2, *6–7 (S.D. Tex. Sept. 23, 2014) (plaintiff prescribed medication for hypertension just barely created fact issue as to whether hypertension substantially limited major life activity of working via testimony that she experienced vision problems, headaches, and confusion due in part to her blood pressure). Evidence the plaintiff uses an unidentified medication to control unspecified symptoms of unstated severity or significance, standing alone, cannot raise a fact issue as to whether his impairment substantially limits a major life activity and thereby renders him disabled because not everyone who uses medication, including medications used to manage medical conditions that are

serious in general, is disabled under the ADA. *See Bates v. Dura Auto. Sys.*, 625 F.3d 283, 284–86 (6th Cir. 2010) (directing trial court to dismiss ADA claim made by plaintiffs fired for legal use of prescription drugs prohibited by employer, including antianxiety agents and opioids, because plaintiffs were not disabled as required by statutory provision under which they sued).

Nor is diabetes a special case dispensing with the statutory distinction between impairments that substantially limit a major life activity and those that merely affect one. While the regulation implementing the ADA's substantial-limitation requirement states that diabetes will satisfy this requirement in virtually all cases due to its effect on endocrine function, the regulation does not relieve the plaintiff of his burden to present evidence to support such a finding. 29 C.F.R. § 1630.2(j)(1)(iv), (j)(3)(ii). Nor does the regulation establish a presumption that diabetes substantially limits endocrine function. *Id.* § 1630.2(j)(1)(iv), (j)(3)(ii)–(iii). Indeed, the administrative agency that promulgated this regulation, the Equal Employment Opportunity Commission, has disavowed such an interpretation in its interpretive guidance. *See* 29 C.F.R. Pt. 1630, App. ("As the regulations point out, disability is determined based on an individual assessment. There is no 'per se' disability.").

Congress could have created a per se rule or presumption as to diabetes or other impairments, but it did not do so in either the original or amended versions of the ADA. *See Griffin v. United Parcel Serv.*, 661 F.3d 216, 222–23 (5th Cir. 2011)

17

(applying version of ADA in effect before 2008 amendments and holding with respect to diabetic plaintiff that Act did not include concept of per se disability); *Scavetta v. Dillon Cos.*, 569 F. App'x 622, 624–25 (10th Cir. 2014) (applying post-2008 version of ADA and holding with respect to arthritic plaintiff that Act did not include concept of per se disability). The absence of a statutory provision establishing per se disabilities is not an oversight; a proposal to include per se disabilities was considered and rejected in negotiations over the legislative language that Congress enacted as the 2008 amendments to the ADA. *See* Kevin Barry, *Toward Universalism: What the ADA Amendments Act of 2008 Can and Can't Do For Disability Rights*, 31 BERKELEY J. EMP. & LAB. L. 203, 269–70 (2010) (noting proposal included "broad list of approximately twenty-five per se disabilities" that "would not require any showing of limitation" but "disability community rejected the per se list and it was dropped from the proposed legislative language").

Consistent with the statutory and regulatory text, the legislative history of the 2008 amendments to the ADA, and the EEOC's interpretive guidance, federal district courts have rejected the notion of per se disabilities even with respect to impairments that are serious in nature. *See Hardy v. Pepsi Bottling Co. of N.Y.*, No. 14-4007, 2016 WL 1301181, at *4 (S.D.N.Y. Mar. 31, 2016) (medical conditions, even serious ones, are not per se disabilities under ADA), *aff'd*, 690 F. App'x 60 (2d Cir. 2017); *see, e.g.*, *Marquez v. Glendale Union High Sch. Dist.*, No. 16-3351, 2018

WL 6418540, at *6–7 (D. Ariz. Dec. 6, 2018) (rejecting argument that brain tumor is per se disability); *Gabriel-Yambo v. Centro Medico Del Turabo*, No. 14-1641, 2015 WL 7428562, at *11–12 (D.P.R. Nov. 20, 2015) (rejecting argument that Marfan Syndrome is per se disability). This is equally true of the impairments the regulation identifies as ones that factfinders will virtually always find to be disabling, including diabetes. *See, e.g.*, *Bell v. Alion Sci. & Tech. Corp.*, No. 15-4334, 2017 WL 2123933, at *5–6 (D.S.C. May 1, 2017) (diabetes is not per se disability), *report and recommendation adopted by* 2017 WL 2118490 (D.S.C. May 16, 2017); *Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1268 (N.D. Okla. 2016) (major depressive order is not per se disability), *aff'd*, 687 F. App'x 748 (10th Cir. 2017); *Alston v. Park Pleasant, Inc.*, No. 14-7237, 2016 WL 398018, at *1 (E.D. Pa. Feb. 2, 2016) (cancer is not per se disability); *Son v. Baptist Healthcare Affiliates*, No. 14-0337, 2015 WL 5305235, at *3 (W.D. Ky. Sept. 10, 2015) (epilepsy is not per se disability); *see also* Curtis D. Edmonds, *Lowering the Threshold: How Far Has the Americans with Disabilities Act Amendments Act Expanded Access to the Courts in Employment Litigation?*, 26 J.L. & POL'Y 1, 28–30 (2018) (noting that plaintiffs "with diabetes, cancer, epilepsy, depression, or other impairments listed in the EEOC regulations cannot expect to automatically qualify as having a disability" given statutory requirement of individualized assessment and that those "who have argued that their impairment should be treated as a per se disability have not met

with success"). The evidentiary threshold to survive summary judgment is a low one, but the plaintiff must show a substantial limitation even with respect to the particular impairments expressly highlighted by the regulation. *See Rodriguez-Alvarez v. Municipality of Juana Diaz*, No. 14-1924, 2017 WL 666052, at *3–4 (D.P.R. Feb. 17, 2017) (eschewing per se rule as to HIV but applying low evidentiary standard on summary judgment and holding that evidence of specific symptoms, sick leave, precautions taken to avoid hospitalization, and medical records documenting treatment created fact issue as to whether plaintiff's HIV substantially limited her immune system); *see also Alexiadis v. N.Y. Coll. of Health Professions*, 891 F. Supp. 2d 418, 428–29 (E.D.N.Y. 2012) (concluding fact issue existed as to whether HIV substantially limited plaintiff's immune system and thus made him disabled based on evidence of his ailments, including Staph infection requiring emergency room visit, as well as evidence of delayed healing and decreased T-cell levels, which together provided some indication his immune system was compromised).[1]

---

[1]   We acknowledge that some federal district courts have suggested a per se rule applies. For example, in *Hensel v. City of Utica*, the court suggested "a plaintiff can show she is disabled merely by alleging that she suffers from diabetes and takes medication for it." No. 15-0374, 2017 WL 2589355, at *4 (N.D.N.Y. June 14, 2017). But *Hensel* concerned a motion to dismiss, not a motion for summary judgment, and the court therefore was not assessing whether evidence created a fact issue. *See id.* at *1–2 (stating plaintiff had to allege sufficient facts to state facially plausible claim to survive motion to dismiss). In addition, the plaintiff's allegations in *Hensel* were more detailed than merely alleging he had diabetes and required medication, and the district court relied on these more detailed allegations in denying the defendant's motion to dismiss. *See id.* at *4 (holding

In sum, though the substantial-limitation inquiry is not a demanding one, it still requires an individualized assessment focusing on the specific effects the impairment has on the plaintiff, not the general effects that people who suffer the disease tend to experience. *Ruiz v. Woodward, Inc.*, No. 17-3046, 2019 WL 6893039, at *5 (D. Colo. Dec. 18, 2019). Thus, a plaintiff cannot avoid summary judgment simply by identifying a serious impairment, even one the substantial-limitation regulation states factfinders will virtually always find to be disabling, and then leaving it to the court to infer that it substantially limits a major life activity. *Beebe v. Colorado*, No. 18-1357, 2019 WL 6255763, at *4 (D. Colo. Nov. 22, 2019). Because Dillard has not introduced any evidence that his diabetes substantially limits his endocrine function or another of major life activity, we hold that he has not raised a genuine issue of material fact as to whether he is disabled under the TCHRA.

---

plaintiff's claim that his diabetes substantially limited his endocrine function survived motion to dismiss given his allegations that he had type-two diabetes, nearly died from dangerously high blood-sugar levels and experienced multiple specific symptoms—loss of eyesight, excessive urination, excessive thirst, weakness, fatigue, dehydration, excessive dry mouth, and rapid weight loss—before diagnosis, and controlled his diabetes via oral medication afterward). Thus, *Hensel* did not apply a per se rule. And if Dillard had testified in similar detail in his summary-judgment declaration, that testimony would have raised a fact issue as to his disability status under the correct legal standard. *See, e.g.*, *Cloutier*, 311 F. Supp. 3d at 937–38; *Levy*, 297 F. Supp. 3d at 319.

### *Notice of Disability*

Dillard argues that a genuine issue of material fact exists as to the second element of his claim, notice of disability. *See Donaldson*, 495 S.W.3d at 439. In support of this argument, Dillard again relies on his own declaration, in which he makes the following statements concerning notice:

> Immediately after the breathalyzer test indicated alcohol was present in my blood, I spoke to the test taker, my first level supervisor and my second level supervisor, and requested to be given the opportunity to take an alternative test (*i.e.* urine or blood test) as a reasonable accommodation for my disability (diabetes).

Dillard does not provide any further details as to notice, including what he specifically told each of the three people with whom he spoke. Notably, Dillard does not claim that he told any of them, or anyone else, about his diabetes or its potential to affect the results of his breathalyzer test before he took and failed the test.

An employer cannot be liable for failing to reasonably accommodate an employee's disability unless it knew of the disability. *Norwood*, 962 S.W.2d at 225. And even when an employer is generally aware of a disability, it may be unable to anticipate all the issues that the disability may create on the job and spontaneously accommodate them. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 n.4 (5th Cir. 1999). Thus, when an employee's disability or need for a particular disability-related accommodation is not obvious, the employee must timely notify his employer of the disability and afford his employer an opportunity to reasonably accommodate it.

22

*Fussell v. Georgia Ports Auth.*, 906 F. Supp. 1561, 1570 (S.D. Ga. 1995), *aff'd*, 106 F.3d 417 (11th Cir. 1997). When an employee requests an accommodation for the first time only after it has become clear that an adverse employment action is imminent, his notice of disability is not timely. *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012).

Courts have recognized that employers often will not be aware that an employee has diabetes based on daily workplace interaction. *See, e.g.*, *Schneider v. Giant of Maryland*, 389 F. App'x 263, 269–70 (4th Cir. 2010) (per curiam). Dillard does not contend that SNC-Lavalin knew of his diabetes before the breathalyzer test. He admits that he sought an accommodation for his diabetes only after his initial breathalyzer test was positive for alcohol. Undisputed evidence also shows that:

- SNC-Lavalin's alcohol policy prohibits employees from being under the influence at work and states that violators are subject to discharge;

- its alcohol policy provides for testing under several circumstances, including random testing when required by clients; and

- Dillard signed a form acknowledging that he had received and understood SNC-Lavalin's policy concerning alcohol.

Thus, the summary-judgment record establishes that Dillard knew he was subject to random alcohol tests and could be fired if he tested positive but did not notify SNC-Lavalin that his diabetes might cause a false-positive breathalyzer test result until after his test result indicated a violation of SNC-Lavalin's alcohol policy and an adverse employment action, possibly termination, was imminent.

23

On this record, we hold that there is no evidence that Dillard timely notified SNC-Lavalin of his disability. An employee does not timely notify his employer of a non-obvious disability, like diabetes, or timely seek an accommodation for a non-obvious disability-related issue, like the effect of ketoacidosis on breathalyzer tests, if he does so only once some adverse employment action is imminent. *See Jones*, 696 F.3d at 90; *see., e.g.*, *Halpern v. Wake Forest Univ. Health Sciens.*, 669 F.3d 454, 457–59 & n.1, 465 (4th Cir. 2012) (affirming summary judgment against student who alleged medical school did not reasonably accommodate his ADHD and anxiety disorder in part because he did not allege his behavioral infractions were disability-related until after disciplinary board recommended he be dismissed from school); *Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999) (affirming summary judgment against employee who alleged employer did not reasonably accommodate her disability-related drowsiness when she did not raise issue until after she was caught sleeping on job, an infraction she knew would lead to her discharge). This general principle is especially apt in the context of workplace alcohol testing. Given that alcohol testing is time-sensitive, and delay will alter its results, an employee's notice of disability and request for an alternative method of testing is untimely if made only after another method has yielded a positive result.

## *Existence of a Reasonable Accommodation*

Dillard argues that a genuine issue of material fact exists as to the third element of his claim, the existence of a reasonable accommodation, which requires proof that with a reasonable accommodation Dillard could perform his job's essential functions. *See Donaldson*, 495 S.W.3d at 439. In support of this argument, Dillard once more relies on his own declaration, in which he makes the following statements on the subject of accommodation:

> Because I am diabetic (hyperglycemia), a typical breathalyzer test may result in a false positive reading. Specifically, it is well-documented that a byproduct of hyperglycemia is a state called ketoacidosis, which causes the production of acetones in the breath. In other words, the breathalyzer may read significant levels of alcohol on a diabetic's breath, where in fact there may be none at all.

These representations about diabetic ketoacidosis, its ability to produce acetones in the breath, and the risk of those acetones causing a false-positive breathalyzer test result are the sole evidence on these subjects. Notably, these representations essentially paraphrase Dillard's petition, which alleges:

> Because Plaintiff is a diabetic, a typical breathalyzer test may very well result in a false positive reading. Specifically, a byproduct of hyperglycemia is a state called ketoacidosis, which causes the production of acetones in the breath. In other words, the breathalyzer may read significant levels of alcohol on a diabetic's breath, where in fact there may be none at all.

Dillard has not offered any expert testimony on these issues, despite their scientific and technical nature. Though he asserts that diabetes-related ketoacidosis is a well-documented fact, the record is devoid of medical literature or similar evidence.

To defeat a no-evidence summary-judgment motion challenging whether a reasonable accommodation would allow the plaintiff to do his job, he must introduce evidence that an accommodation of his disability exists and is reasonable. *See Hagood v. Cty. of El Paso*, 408 S.W.3d 515, 525 (Tex. App.—El Paso 2013, no pet.). To establish the existence of a reasonable accommodation, Dillard must show there is some causal connection between the major life activity his diabetes allegedly substantially limits, endocrine function, and the accommodation that he seeks, an alternative method of alcohol testing. *See Youngman v. Peoria Cty.*, 947 F.3d 1037, 1042 (7th Cir. 2020). Thus, to avoid no-evidence summary judgment, Dillard must introduce evidence that his diabetes caused him to have ketoacidosis, which in turn resulted in the presence of acetones in his breath and a false-positive breathalyzer test result, and that an alternative method of alcohol testing would not have indicated that he had been drinking on the job. *See id.* at 1042–43.

The problem, for Dillard, is that the only evidence of such a causal connection consists of his own conclusory assertion that one exists. Dillard says that "a typical breathalyzer test may result in a false positive reading," but he does not say how he knows this or even how he knows his test was a typical one subject to this fallibility.

26

He says the production of acetones in the breath as a result of diabetic ketoacidosis is well-documented, but he has not introduced any of this documentation. Nor has Dillard introduced any expert testimony on the subject. Further, the record contains no evidence that Dillard was suffering from ketoacidosis when tested. In sum, all Dillard has supplied is a layman's say-so on complex medical issues. If an expert's say-so is no evidence, then a layman's say-so is no evidence as well. *See Travelers Ins. Co. v. Wilson*, 28 S.W.3d 42, 48 (Tex. App.—Texarkana 2000, no pet.) (conclusory statements by experts and laymen alike are not evidence).

In his brief, Dillard does cite a case report involving a single patient for the proposition that diabetic ketoacidosis affects breathalyzer results. *See* Jacob Reinhart, *Early Detection of Diabetic Ketoacidosis by Breathalyzer in a Sailor Reporting for Duty*, MIL. MED., Nov.–Dec. 2019, at e951–52. But Dillard did not file this case report in the trial court, so the case report is not summary-judgment evidence. *See Lance v. Robinson*, 543 S.W.3d 723, 732 (Tex. 2018) (materials not filed with trial court are not competent summary-judgment evidence); *see also Robinson v. Warner–Lambert*, 998 S.W.2d 407, 412 (Tex. App.—Waco 1999, no pet.) (trial court cannot take judicial notice of article in medical journal). And because the case report is not in the record, we cannot consider it on appeal. *Dauz v. Valdez*, 571 S.W.3d 795, 811 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

At any rate, a case report could not be used to establish that diabetic ketoacidosis affects breathalyzer results because case reports, which are based on the examination and treatment of patients in an uncontrolled setting, are scientifically unreliable as proof of causation. *Merrell Dow Pharm. v. Havner*, 953 S.W.2d 706, 719–20 (Tex. 1997). Moreover, the case report in question was published more than two years after Dillard's breathalyzer test. So, even if it was in the record and qualified as scientifically reliable evidence that diabetic ketoacidosis can cause false-positive breathalyzer test results, it would not be evidence that this potential for false-positives was known when Dillard was tested.

*Youngman* illustrates the inadequacy of Dillard's summary-judgment proof on the existence of a reasonable accommodation. In that case, a counselor at a juvenile detention center alleged the center refused to reasonably accommodate his disability. 947 F.3d at 1039. Specifically, he alleged that working in a control room filled with electronics gave him motion sickness due to his hyperthyroidism and that he therefore needed to be assigned duties outside of the control room. *Id.* at 1039–41. In affirming summary judgment for the center, the court of appeals observed:

> The problem, for Youngman, is the lack of a causal nexus between his hyperthyroidism and the particular limitation for which he seeks an accommodation. Youngman presumes that the motion sickness he suffers when assigned to the detention center's control room is the result of his hyperthyroidism. But he cites no evidence in the record to support that necessary causal link.

28

*Id.* at 1042. Absent evidence of a causal link between the counselor's motion sickness and his hyperthyroidism, his claim failed as a matter of law. *Id.* at 1043.

Dillard's claim fails as a matter of law for the same reason. Having failed to introduce any evidence that his diabetes caused him to develop ketoacidosis, which in turn produced acetones in his breath resulting in a false breathalyzer test result, Dillard has failed to raise a genuine issue of material fact as to whether the accommodation he seeks, an alternative method of alcohol testing, bears any relation to his disability or would have allowed him to perform the essential functions of his job. On this record, we hold that Dillard has not raised a fact issue as to the existence of a reasonable accommodation that would have allowed him to do his job.

## CONCLUSION

Dillard failed to introduce evidence raising a genuine issue of material fact on three essential elements of his claim—disability status, notice of disability, and the existence of a reasonable accommodation. Each of these failures independently supports the trial court's no-evidence summary judgment. We affirm.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.